UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
DJOLE DRAGOVIC,                             :
                                            :   CASE NO. 1:10-CV-01250
         Plaintiff,                         :
                                            :
    v.                                      :   OPINION & ORDER
                                            :   [Resolving Doc. No. 33]
ENPROTECH STEEL SERVICES, *et al.*,         :
                                            :
         Defendants.                        :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Djole Dragovic sues Defendants United Steel Workers International Union and United Steel Workers Local 979-1 for failing to arbitrate a grievance that he had filed challenging his discharge, for unlawfully considering his national origin when deciding not to arbitrate that grievance, and for contributing to disability discrimination in his workplace. [Doc. 18.] The Defendants move for summary judgment on these duty of fair representation and discrimination claims. They argue that Enprotech had just cause to fire Dragovic, and that the Union reasonably decided not to arbitrate his discharge. The Defendants add that no sufficient evidence supports Dragovic's national origin and disability discrimination claims. [Doc. 33-1.] Dragovic opposes the motion. [Doc. 43.]

For the following reasons, the Court **GRANTS** the Defendants' motion.

**I. Background**

-1-

Case No. 1:10-CV-01250
Gwin, J.

Plaintiff Dragovic, a Serbian immigrant, worked for Enprotech Steel Services' Caster Disassembly Department from September 2006 until December 15, 2009. As a union member, a collective bargaining agreement between Enprotech and Defendants United Steel Workers International Union ("USW International") and Local 979-1 governed Dragovic's employment. [Doc 18-1.]

Though he had otherwise satisfactory evaluations, [Doc. 43-3, *e.g.*], Dragovic was disciplined several times while employed at Enprotech. On August 7, 2007, Dragovic received a Corrective Action Report for insubordination. The Report cited Dragovic's refusal to work on a job that his supervisor, Phil Wade, had assigned; it also warned that future insubordination would "most likely result in an immediate suspension and possible termination of employment." [Doc. 40-3 at 3.] On October 8, 2007, Enprotech again disciplined Dragovic, writing him up for violating the company's no smoking policy. [Doc. 40-4.] Then, on August 14, 2008, Enprotech issued Dragovic another Corrective Action Report for a July 22, 2008 incident where Dragovic left for a doctor's appointment without clocking out. This second Report warned that subsequent insubordination "will lead to termination." [Doc. 40-6.] Neither Dragovic nor the Union filed a grievance based on any of these incidents.

On December 4, 2009, Dragovic complained to fellow union members about not being promoted to a Class I classification. The Union recommended Dragovic speak with his supervisor. Dragovic then approached his supervisor, Phillip Wade. Wade told Dragovic, "This is not the time. We have discussed this before; I am not going to stand here and have this discussion with you again." [Doc. 38-1 at 93] After the end of a break, Dragovic went to another union member to complain about the job classification issue. Dragovic's supervisor, Wade testified:

> At that point, I asked them what they were talking about, and he said he was there asking to use the crane. I said, "You are talking union business on my time. You do it on your break, your coffee break, your lunch break or afterward, I don't care which, but you don't do it on my time."
>
> And Djole said, "Then write me up."
>
> I said, "I will write you up."
>
> And Djole turned around and looked at me and said, "Fuck you." He started to walk away from the lathe toward the driveway at that point. I walked up beside him and got beside him and said, "Excuse me, what did you say?" [Dragovic responded,] "I said fuck you."

[*Id.* at 10-11]

Dragovic denies discussing union business; he says that Wade prompted the outburst by threatening to write him up and by grabbing his arm. [Doc. 43 at 10.] Based on this incident, and on Dragovic's previous warnings, Enprotech suspended Dragovic and moved to terminate his employment.

As part of the discharge process, Enprotech held a pre-termination hearing for Dragovic on December 9, 2009. In an apparent effort to avoid termination and prior to the hearing, Local 979-1 representative Harold Sanford says he advised Dragovic to apologize for cursing at Wade, and that Dragovic agreed to apologize. [Doc. 37-1 at 44.] At the meeting, Dragovic did not apologize, [Doc. 39-1 at 74-75], and instead stated that he could not work for Wade. [Doc. 40-1 at 55; Doc. 44 at 3.] Even so, Local 979-1 representatives assured Enprotech that Dragovic regretted his behavior and urged Enprotech not to fire Dragovic. [Doc. 39-1 at 77.]

Despite these union assurances, Enprotech fired Dragovic on December 15, 2009. [Doc. 40-7.]

On December 19, 2009, Local 979-1 filed a grievance protesting the termination. [Doc. 39-2.]

Case No. 1:10-CV-01250
Gwin, J.

After reviewing Dragovic's case, however, USW International representative Thomas Zidek concluded that Dragovic and the Union would likely lose the arbitration. Prior to Dragovic's final grievance hearing, Zidek told Dragovic this opinion and indicated that the Union would not likely arbitrate his case. [Doc. 43 at 11; Doc. 43-19 at 9.] Yet at Dragovic's final hearing, union representatives say they continued to argue that Dragovic regretted his conduct and that he should be suspended rather than fired. [Doc. 33-1 at 15.]

Enprotech denied the Union's grievance. [Doc. 43-12.] Zidek then proposed a settlement deal to Enprotech: if Enprotech offered not to contest Dragovic's unemployment eligibility in exchange for a release of all non-workers' compensation employment claims, the Union would waive its right to take Dragovic's discharge to arbitration. [Doc. 43-15.] Enprotech made the offer to Dragovic's attorney, who refused the release. [Doc. 43 at 12.] The Union did not arbitrate Dragovic's case.

Dragovic now argues that the Union breached its duty of fair representation by failing to arbitrate his discharge, and by agreeing to waive its right to do so. Dragovic also says that throughout his employment at Enprotech, Local 979-1 Unit Chair Antonio Campana made several derogatory comments about Dragovic's national origin. Dragovic says that Campana commented that "there were a lot of gypsies in Serbia," and that he "heard Serbia lost Kosovo." [Doc. 43-18 at 6.] Dragovic argues that Campana's discriminatory animus influenced USW representative Zidek's decision not to take Dragovic's case to arbitration. [Doc. 43 at 20.]

In addition, Dragovic says that Enprotech discriminated against disabled employees, including Dragovic himself, and that Local 979-1 contributed to this discrimination by not grieving those discriminatory acts. [Doc. 43 at 21.]

-4-

Case No. 1:10-CV-01250
Gwin, J.

In response, the Defendants argue that the Union did not take Dragovic's case to arbitration because they reasonably concluded it would not prevail; the Defendants also deny that any discriminatory animus motivated their actions. [Doc. 33-1.]

**II. Legal Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301.

**III. Analysis**

*A. Duty of Fair Representation*

Dragovic first alleges that the Defendants breached their duty of fair representation when they failed to arbitrate Dragovic's dismissal. To succeed on such a claim, a plaintiff must show that (1)

-5-

Case No. 1:10-CV-01250
Gwin, J.

his employer breached its collective bargaining agreement with the union, thus implicating the union's duty of fair representation, and (2) the union breached this duty by allowing the employer's breach to go unrepaired. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 165 (1983). These two prongs are interdependent: if the plaintiff cannot show either that the employer breached the agreement or that the union breached its duty, his claim must fail. *White v. Anchor Motor Freight*, 899 F.2d 555, 559 (6th Cir. 1990). In this case, Dragovic's claim against the Defendants fails on both prongs.

First, Dragovic cannot show that Enprotech breached the collective bargaining agreement. Dragovic argues that Enprotech breached the agreement in three respects when it fired him: (1) Enprotech fired Dragovic without just cause; (2) Enprotech did not fire other employees for similar behavior; and (3) Enprotech did not timely file an answer to Dragovic's discharge grievance, so the grievance should have automatically been upheld in Dragovic's favor. [Doc. 43 at 13.]

With regards to Dragovic's just cause argument, Section V(1) of the collective bargaining agreement grants Enprotech exclusive authority over the suspension and discharge of its employees, so long as such actions are taken with "just cause." [Doc. 18-1 at 8.] Dragovic says that cursing at a supervisor does not constitute just cause, particularly where, as Dragovic alleges happened here, the supervisor instigated the confrontation. [Doc. 43 at 13.]

However, insubordination almost always provides just cause for discharge. Employees who do not follow management orders or who otherwise challenge the management's authority to run the business can be discharged for just cause. Such insubordination includes failing to comply with a supervisor's directives; it also includes threats or abusive language towards supervisors. *See Reliance Steel*, 113 LA 816 (Gentile, 1999) (despite long employment, employer had just cause to

Case No. 1:10-CV-01250
Gwin, J.

fire employee who had screamed at foreman and who was otherwise insubordinate, especially after the employee had earlier been warned about such conduct.)

In addition, Enprotech did not decide to fire Dragovic solely because he cursed at his supervisor, Wade. Enprotech also considered that Dragovic did not apologize for the incident at his pre-termination hearing, and that Dragovic stated at the hearing that he could no longer work with Wade. [Doc. 40-7.] And, Enprotech considered that Dragovic's last Corrective Action Report explicitly warned that future subordination would lead to discharge. [Doc. 40-6]; *see Tester Corp.*, 115 L.A. 428 (Neigh, 2000) (employee with disciplinary record who cursed at supervisor was discharged for insubordination with just cause); *Electronic Corp. of America*, 3 L.A. 217, 220 (Kaplan, 1946) (incident's "last straw" effect warranted discharge); *City of Duluth, Minn.*, 113 L.A. 1153, 1163 (Neigh, 2000) (prior warnings as a negative factor). Considering these factors together, Enprotech had just cause to fire Dragovic.

Dragovic's next argument, that Enprotech did not fire another employee, Freddy Collier, after Collier threatened another coworker, [Doc. 43-5], also fails to show Dragovic was fired without just cause. Even assuming that Collier physically threatened the coworker, Dragovic does not dispute that Collier was ultimately disciplined—though not discharged—for that behavior. Nor does Dragovic dispute the Defendants' assertion that because Collier expressed immediate regret for his actions, [Doc. 33-1 at 16], Enprotech was justified in its disciplinary leniency.

Dragovic additionally argues that Enprotech "severely breached" the Agreement when it filed an answer to Dragovic's termination grievance one day late. [Doc. 43 at 13.] Yet a late response—particularly of just one day—need not automatically result in judgment against the employer, particularly where, as here, the employer and union have been mutually flexible on time

Case No. 1:10-CV-01250
Gwin, J.

limits. [Doc. 44-3 at 16; Doc. 45-1 at 12]; *see Midwest Grain Prods.*, 98 L.A. 780 (Suardi, 1992) (considering past practice of leniency).

Finally, even if Dragovic could show that Enprotech breached the Agreement, he cannot show that the Defendants breached their duty of fair representation. Dragovic primarily offers only his own assertions that Local 979-1 representative Campana and USW representative Zidek conspired to avoid taking Dragovic's grievance to arbitration, or that the Defendants otherwise acted arbitrarily, discriminatorily, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Dragovic does not contest that at his pre-termination hearing, and again at his final grievance hearing, union representatives argued that Enprotech should merely suspend Dragovic rather than discharge him. That the Union ultimately did not consider Dragovic's claim strong enough for arbitration is not itself a breach of its fair representation duty. *See id.* at 191-92 (an employee cannot compel arbitration of his grievance regardless of its merit).

Nor did the Defendants breach their duty of fair representation in agreeing not to arbitrate Dragovic's case in exchange for Enprotech offering Dragovic a settlement deal. Dragovic acknowledges that Union representatives had indicated, previous to proposing this deal, that they did not consider his claim strong enough for arbitration. [Doc. 43 at 11.] If anything, their later settlement effort indicates that the Defendants continued to act in Dragovic's favor, using the threat of arbitration—in reality, a non-existent one—to secure his unemployment benefits.

Accordingly, because Dragovic cannot show that Enprotech breached the collective bargaining agreement, or that the Defendants breached their duty of fair representation, the Court grants summary judgment to the Defendants on Dragovic's duty of fair representation claim.

*B. Discrimination*

Case No. 1:10-CV-01250
Gwin, J.

Dragovic brings two discrimination claims against USW International and Local 979-1. He first argues that USW International impermissibly considered his national origin in its decision not to arbitrate his discharge, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*.[1] Second, Dragovic says that Local 979-1 discriminated against him on the basis of disability, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, when it failed to grieve an instance of disability discrimination by Enprotech supervisor Phil Wade.[2] [Doc. 43 at 20-21.]

B(1). National Origin Discrimination

First, because Dragovic has exhausted his administrative remedies only as to the local Union—Dragovic's EEOC charge and resulting right-to-sue letter only named Local 979-1, [Doc. 36-2; Doc. 36-3]—he may not now allege national origin discrimination against USW International. 42 U.S.C. § 2000e-5(f)(1) (Title VII exhaustion requirement). Though failure to name a defendant in an EEOC charge does not demand dismissal if the unnamed party shares an identity of interest with the party named in the charge, *Baetzel v. Home Instead Senior Care*, 370 F. Supp. 2d 631, 636 (N.D. Ohio 2005), no such identity of interest between USW and Local 979-1 has been shown here.

The Sixth Circuit recognizes two tests for establishing identity of interest between a named and unnamed party. Under the first test, the unnamed party must have sufficient notice of the claim so as to participate in voluntary conciliation proceedings. *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir. 1987) (adopting the *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981), identity of interest test). Under the second test, four factors determine

---

[1] In response to the Defendants' summary judgment motion, Dragovic abandoned his national origin discrimination claims premised on the local Union's failure to grieve the award of an Inspector position to another employee and its failure to grieve Enprotech's refusal to promote Dragovic.

[2] Dragovic abandons his claim that the Union discriminated against him by considering his disability and requests for accommodation as part of its decision not to arbitrate Dragovic's termination.

Case No. 1:10-CV-01250
Gwin, J.

identity of interest: (1) if the plaintiff could reasonably ascertain the role of the unnamed party when he filed the EEOC complaint; (2) if such a similarity of interest exists between the named and unnamed party that including both in EEOC proceedings would be unnecessary; (3) whether the unnamed party was prejudiced by its absence from EEOC proceedings; and (4) whether the unnamed party has represented to the plaintiff that its relationship with him is through the named party. *Romain*, 836 F.2d at 245-46 (also adopting the *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977), identity of interest test).

Dragovic has not set forth facts suggesting an identity of interest under either test. Under the first test, USW argues—and Dragovic does not contest—that it had no notice of Dragovic's August 30, 2010 EEOC charge until after the EEOC issued its right-to-sue letter on September 1, 2010. [Doc. 33-1 at 21; Doc. 36-2; Doc. 36-3.] Under the second test, Dragovic does not contest that he knew of USW International's role in his discharge at the time of his EEOC charge. [*See* Doc. 1 (naming USW as a defendant in this action on June 3, 2010, prior to filing his August 30, 2010 EEOC charge).] Nor does he challenge that including both USW and Local 979-1 in EEOC proceedings would have been unnecessary, or that USW never represented to Dragovic that its relationship with him would be through Local 979-1. [Doc. 33-1 at 21.] Because Dragovic has not shown an identity of interest between USW International and Local 979-1, and has exhausted his remedies only against Local 979-1, he cannot now bring a national origin discrimination claim against USW.

Even if Dragovic could show identity of interest, he nonetheless presents no evidence that Zidek, the USW official who decided not to arbitrate Dragovic's termination, was motivated by discriminatory animus or influenced by the discriminatory motivations of others. *Noble v. Brinker*

-10-

Case No. 1:10-CV-01250
Gwin, J.

*International*, 391 F.3d 715, 723-24 (6th Cir. 2004). Dragovic offers only his own conclusory allegations that Campana's animus toward Serbians "had a direct affect [sic] on Campana['s] communications with Zidek and the ultimate decision not to take this case to arbitration." [Doc. 43 at 20.] He presents no other evidence of such influence. *See, e.g.*, *Wells v. New Cherokee Corp., 58 F.3d 233, 237-38 (6th Cir. 1995)* (supervisor's animus imputed to decision-maker where the two regularly consulted and acted jointly).

B(2). Disability Discrimination

Dragovic's disability discrimination claim fails, as well. In alleging disability discrimination, Dragovic says that on December 7, 2009, Wade attempted to assign him a full workload despite Dragovic's medical restrictions from a wrist injury. Dragovic says he complained about this full workload assignment at his December 9 pre-termination meeting, but that Local 979-1 did not file a grievance. [Doc. 43 at 21.] Dragovic argues that by failing to grieve this incident, the local Union contributed to Enprotech's disability discrimination. [Doc. 43 at 21.]

Yet where, as here, a plaintiff seeks to impose a duty on the union beyond that of fair representation, "he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union . . . ." *United Steelworkers of America v. Rawson*, 495 U.S. 362, 374 (1990); *see also Int'l Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 859-60 (1987) (union assumes a duty toward employees only through contractual agreement).

Dragovic has not shown that Local 979-1 owed him a duty to grieve this alleged instance of disability discrimination. The terms of the collective bargaining agreement establish a grievance procedure only for disputes "concerning the application or interpretation" of the Agreement itself.

Case No. 1:10-CV-01250
Gwin, J.

[Doc. 18-1 at 9.] Though Section III of the Agreement prohibits Enprotech and the Union from engaging in disability discrimination, that Section also provides that "[a]ny violation of existing Federal and State laws shall not be a basis for any grievance" made through the collective bargaining agreement's grievance procedure. [Doc. 18-1 at 7-8.] As Dragovic brings his disability discrimination claim under the federal Americans with Disabilities Act, [Doc. 18 at 25], the Agreement excludes this claim from its grievance procedure. Dragovic points to no other provision of the Agreement that would impose a duty on the local Union to file a grievance.

Accordingly, the Court grants summary judgment to the Defendants on Dragovic's national origin and disability discrimination claims.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for summary judgment.

IT IS SO ORDERED.


Dated: February 23, 2011                    s/        *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE